Memorandum of Decision
This is an action for the termination of parental rights of Eneida R. and Hector L. Sr., the biological parents of the minor children Hector, born September 28, 1992; Krystal L., born September 28, 1993; and twins, Keisha and Kenya L., born. January 3, 1996. These children have previously been found to be neglected children on November 5, 1996 (Teller, J.). The father of the children was brought to court from a correctional facility where he has been sentenced with a maximum release date of May 14, 2000. Both the father and the mother of these children attended the proceeding and were each represented by an attorney.
The court finds that there is no proceeding pending in any other court affecting the custody of the children. The court heard from DCF social workers, the children' s foster mothers, a police officer, the clinical supervisor of a methadone clinic, a hospital record keeper and both of the parents. The court received into evidence over two days, social studies, court approved expectations signed by the parents, arrest and conviction records, a police report, substance abuse treatment records, and a visitation schedule.
The court makes the following findings by clear and convincing evidence. The sociological history of the parents was presented in the form of testimony of the social workers and the social studies. This social history of each parent was not challenged by the parents. The father's position is basically that he is reforming himself in prison, he intends to take anger management programs and substance abuse programs, he hopes to be a good role model for his children after he gets out, goes through a half-way house program, gets a job, establishes a home CT Page 4303 and gets back on his feet. Since he met the children's mother in 1991 he has been in jail for six and a half years. If the termination petition is granted. he hopes the maternal aunts who presently care for the children will adopt them.
The mother's testimony in court was slow and labored. The court noted for the record that the mother appeared to be impaired each day she was in court. The court noted for the record that Eneida's eyes were glazed and half-closed. Her speech was slow and slurred. Her movements were sluggish and she was belligerent and argumentative while at the counsel table. She exhibited a vast array of, often inappropriate, emotional responses, frequently changing her facial expressions from sadness to anger to despair to laughter in a very short period of time. When the court asked if she were impaired, there was no response. A competency hearing had been held for the mother prior to the trial and she had, on March 5, 1998, been found to be competent to understand the nature of the proceedings and assist her counsel in her defense. A social worker testified that she has seen Eneida with appropriate and coherent speech, but that ninety percent of the time, she was in the same condition as she appeared in court.
Since the mother's impairment by drugs is so long standing and chronic, continuing up to the date of trial, it is necessary only to set forth briefly, the social history and not itemize her criminal and substance abuse history in detail. The Department of Children and Families ("DCF") has been involved with this family since 1994. Various services were provided to help preserve the children in the home. The two oldest children had been removed for brief periods twice in 1995. On January 3, 1996, the youngest children, the twins, were born. Four weeks later, a city police officer on private duty in a city department store observed a man acting in a suspicious manner walking through employee-only areas of the store. She observed the man transfer children's shoes to a bag in the shopping basket of a female with three young children, two in a stroller. As they went through the checkout, the police officer, who had the ability from the security location to read the register tape, saw that they had not paid for the shoes. Both the man, who was carrying a child on his back in a back pack, and the woman with her children were detained. A struggle ensued, police back-up was called, and the detainees were subdued and arrested.
The male and female gave false names to the police. The man CT Page 4304 had thirty-eight packets of heroin, street packaged, on his person and $568 in his wallet. The sneakers which they had not paid for, cost $14.99. It was not until after the arrest, when DCF was called in, that the police found the true identity of the male and female and obtained their history of prior arrests and convictions. The two were Eneida and Hector. They had these children with them. The children were removed and placed in foster care and shortly thereafter, into relative placement where the children still remain. The twins were four weeks old. In Eneida's testimony in court she urged the court to return to her Hector and Krystal, ". . the twins, they wasn't with me too long, the ones I really care about is Hector and Krystal."
Eneida was born in 1961 in Puerto Rico. She is the second youngest of 12 children of a mentally ill mother. Her father was an alcoholic who use to drink and then go "crazy." When her mother was hospitalized for her illness, her older sister ended up cooking for her and the siblings. They had no money and often lived in the streets. They often slept in hallways. She attended school until the sixth grade. When she was eleven she moved with her family to Hartford. (About 1972).
She was arrested at age seventeen for robbery in the first degree, at age eighteen for assault in the first degree and carrying a weapon. She has numerous arrests for larcenies and drug violations. While in one drug rehabilitation program she met Hector L. She has been with him since 1991. Hector has been incarcerated much of the time.
Eneida had her first child in 1984. That child, Jefferson R., lived with her for the longest time; from 1984 until his final removal in 1996. Jefferson's father is by another paternity and that man has never been involved in the life of Jefferson. Jefferson was removed with the other children at the end of January, 1996, when Hector and Eneida were arrested. Jefferson is a profoundly disturbed child who is now institutionalized.
DCF has been involved with the family since June, 1994, when Eneida was referred to St. Francis Parent Aide Program. In August, 1994, a referral was made to the Hispanic Health Council. Other agencies providing services to the family included the Visiting Nurses Association. Klingberg Family Preservation Services was contacted on January 26, 1996, five days before Eneida's arrest. DCF has recognized that Eneida has had a substance abuse problem and has made referrals themselves to CT Page 4305 Mental Health Services of the Capitol Region, and substance abuse services from the University of Connecticut Health Center at Farmington and to Blue Hills Hospital for inpatient treatment. Enieda has also been in the Stonington Institute in Stonington, CT., and the Institute of Living Out Patient Drug Rehabilitation Program.
Eneida signed "Expectations" with the court services officer which were approved by the court.(Exhibit # 6). Those expectations indicated to her that she was to remain substance free, avoid further involvement with the criminal justice system and to secure adequate housing and income. She has failed each of those expectations. While she has entered various treatment programs, the purpose of those programs was outcome-oriented, to stay substance free. She has failed to complete the various programs and could not remain free of substances while in the programs.
She was admitted to the Institute of Living program June 5, 1997. She was discharged thirteen days later. During her stay, she had inappropriate behavior on June 6th, when a syringe fell out of her pocket. She refused a urine screen. When one was taken on June 9, 1997, the screen was positive for cannabis. On June 13, 1997, her peers questioned the paraphernalia in her possession, she was seeking urine specimens from her peers, she became upset and screaming that her peers were lying and did not like her. She refused to give a urine specimen saying she could not void and quit the program. (Exhibit # 10).
She entered another program at a methadone maintenance clinic and substance abuse treatment facility ("the clinic"). The notes of that clinic (exhibit # 8), indicate that she was admitted to treatment on August 4, 1997, and she agreed to discontinue the use of illicit or unprescribed drugs. She agreed to address her psychological issues. This was her fourth admission to the clinic. On September 11, 1997, she had illicit drugs in her possession at the clinic and was recommended for discharge. She had been observed in the ladies room with five bags of drugs held together with an elastic in her underpants. That recommendation of discharge was later reconsidered when Eneida enrolled in the Blue Hills Hospital for a thirty day detoxification program.
Eneida was discharged from Blue Hills on November 24, 1997. She re-entered the clinic program with the stipulation that she would provide random urine samples. Between the end of November, CT Page 4306 1997, and January 8, 1998, Eneida had four screens where she was "UTV" (unable to void), three screens with opitiates, one cocaine urine, 3 benzodiazepine screens. Only one screen, immediately after her detox, was clean. Her drug screens as recently as January 28, 1998, were positive for morphine derivatives and benzodiazepines. One year after her children had been removed, she was still drug-impaired. She had been in other drug treatment programs at the University of Connecticut and Stonington Institute that she had unsuccessfully completed.
It is likely that she was under the influence of drugs while in court, or that her mental and physical capacities have been so damaged by drugs over the years, that she just appears to be under the influence of drugs. In either event, she remains completely unable to parent a child. She has not been able to demonstrate that she can care for herself alone. The one child that was with her for the longest time, Jefferson, is so badly emotionally damaged that he is currently institutionalized.
The father, Hector, has not offered a plan to care for the children and indeed, is unable to do so. He has not completed any personal rehabilitation programs although he professes an intention to do so in the future. He recognizes that the children are well adjusted and being well-raised in their current relative foster placements. He does not object to their being adopted by their present caretakers. Both are relatives on the maternal side of the family.
ADJUDICATION
With respect to the statutory grounds for termination of parental rights of the mother, Eneida R., and the father, Hector L. Sr., the court finds by clear and convincing evidence that these children have previously been adjudicated neglected and uncared for on November 5, 1996, and the parents have failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the ages and needs of the children, such parents could assume a responsible position in the lives of the children. General Statutes 17a-112 (c)(3)(B). The court also finds that the mother and father have no ongoing parent child relationship with the twins Keisha and Kenya, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the children, such CT Page 4307 parents could assume a responsible position in the lives of the children. General Statutes 17a-112 (c)(3)(B). The court also finds that the mother and father have no ongoing parent child relationship with the twins Keisha and Kenya, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child; General Statutes Sec. 17a-112 (c)(3)(D). The court finds that these grounds have existed for more than one year.
Mandatory Findings:
The court makes the following factual findings required by17a-112 (e):
1) Appropriate and timely services were provided by the Department of Children and Families, including substance abuse and individual counseling, transportation assistance, and visitation coordination, as more particularly set-forth in the Social Study, Exhibit 4, page 8.
2) Whether DCF has made reasonable efforts to reunify the family, pursuant to the Adoption Assistance and Child Welfare Act of 1980. The court finds by clear and convincing evidence that the Department of Children and Families made reasonable efforts to reunify the family, given the situation and circumstances, as far as possible. The goals of the Act are to 1) prevent removal of the children, 2) reunify the family, if appropriate, and 3) to children, if reunification is inappropriate. Here the children were removed upon the parents incarceration. The children are well adjusted in relative placements. The parents are unable to care for the children and thus cannot be reunited. Permanency planning is the most beneficial for the children and the only practical resolution.
3) The Department, with the approval of the Court, set reasonable and realistic expectations in order to reunify the family. There was only marginal compliance or participation by the mother. The mother has failed to complete recommended treatment and programs, and the mother, likely, continues to be impaired by drugs. The father recognizes that the children's current placement is in their best interest since he is presently incarcerated and, after release, will require time to get his life in order. The children's permanent placement cannot be CT Page 4308 delayed.
4) The children have strong emotional ties with the relative foster families who have provided the physical, emotional and educational support these children need. The two youngest children have no positive emotional ties to the biological parents.
5) Finding regarding the age of the children. Hector L. Sr., Jr. is five and a half years old; Krystal is four and half; the twins are two years of age. They have been in foster care for more than two years. They deserve a permanent, structured caring, nurturing environment that the foster parents are willing to permanently provide. Neither of the parents is able to offer the children a secure home at this time or at any time in the reasonably distant future.
6) Finding regarding efforts of the parents to adjust their circumstances, conduct or conditions etc. Mother requires extensive therapy to deal with her parental failings and substance abuse difficulties. While father has been incarcerated he has yet to take available substance abuse and parental programs offered for his personal rehabilitation. Giving them additional time would not likely bring their performance, as parents, within acceptable standards sufficient to make it in the best interests of the children to be reunited. In re Luis C.210 Conn. 157 (1989); In re Juvenile Appeal 183 Conn. 11, 15 (1981).
7) Finding regarding the prevention of the parents from having a meaningful relationship etc. The substance abuse and criminal behavior of the parents has resulted in their present situation. The Department initially attempted to encourage contact. No unreasonable conduct is noted. The mother and father were offered regular visitation with the children.
DISPOSITION
The court finds that these grounds and circumstances have existed over an extended period of time which is greater than one year. The court finds, based upon the testimony and evidence presented, that it would be in the children's best interest to terminate the parental rights of Eneida and Hector at this time. This finding is made after considering the children's sense of time, their need for a secure and permanent environment, the relationship that the children have with their foster parents, CT Page 4309 and the totality of circumstances that the termination of parental rights is in the children's best interest. In reJuvenile Appeal (Anonymous), supra, 177 Conn. at 667-68. See generally, J. Goldstein. A. Freud A. Solnit, Beyond the BestInterests of the Child 99 (1979).
 Order
It is accordingly, ORDERED that the parental rights of Eneida R. and. Hector L. Sr., are hereby terminated. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent for the four children. A permanency plan shall be submitted within 90 days. A review Plan for Terminated Children shall be filed in accordance with Federal Law.
Francis J. Foley, Presiding Judge Child Protection Session